# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ALEXANDER DIMITRIJEVIC, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION H-04-3457 |
| | § | |
| TV&C GP HOLDING INC., | § | |
| *Defendant.* | § | |

## ORDER

This employment case is before the court on plaintiff's motion for sanctions for improper removal (Dkt. 57). Having considered the parties' submissions, all matters of record, and applicable legal authorities, the court determines that plaintiff's motion should be granted, but that the amount of sanctions requested is excessive.

## I.    BACKGROUND

Defendant removed this state law discrimination case in September 2004 claiming diversity jurisdiction. Defendant is one of hundreds of affiliates of the global company Tyco International, Ltd. Defendant represents that many of these affiliates have their principal place of business in Princeton, New Jersey or Exeter, New Hampshire. Apparently, defendant's prior counsel assumed, without conducting sufficient research, that the same was true of this defendant.

Plaintiff did not file a motion to remand. However, in the course of discovery plaintiff sought information that he considered, rightly or wrongly, to be relevant to the

issue of defendant's citizenship for purposes of diversity jurisdiction. Defendant resisted this discovery. In his August 2005 motion to compel, plaintiff stated "one of the important issues in this case is whether the Court has subject matter jurisdiction over this case through diversity of citizenship."[1] After reviewing this motion, the court set a hearing on the jurisdictional question. In preparation for the hearing, counsel for defendant determined that the named defendant is a citizen of Texas. On September 9, 2005, Defendant filed a memorandum conceding that diversity of citizenship is lacking in this case. Thereafter, the parties filed a joint stipulation for remand and the district court remanded the case to state court.

In accordance with the parties' stipulation, the court retained jurisdiction over the issue of sanctions. *See Friends for American Free Enterprise Assoc. v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 578 n.2 (5th Cir. 2002) (the court retains power to issue sanction under Rule 11 even when the case is no longer before it); *Lazorko v. Pennsylvania Hosp.*, 237 F.3d 242, 247 (3d Cir. 2000) (court still had jurisdiction to issue sanctions after it dismissed or remanded case, even if it lacked subject matter jurisdiction over the claim in which the sanctionable conduct occurred).

---

[1]     Plaintiff's motion to compel (Dkt. 31), at 3.

II.    **DISCUSSION**

Plaintiff contends that it is entitled to recover $32,031.53 for its fees and expenses resulting from defendant's wrongful removal.  Defendant argues that plaintiff is procedurally barred from pursuing Rule 11 sanctions.  Defendant further argues that plaintiff is not entitled to sanctions under 28 U.S.C. § 1447(c) because he bears a substantial portion of the blame for this case remaining in federal court.  Alternatively, defendant argues that plaintiff's request is excessive, and only $1,950 of the fees and expenses incurred by plaintiff are the result of removal.

The court generally has authority to sanction a party or counsel for wrongful removal pursuant to Federal Rule of Civil Procedure 11 or to award costs and fees pursuant to 28 U.S.C. § 1447(c).  Each source of authority, however, comes with certain limitations and procedural requirements.

***Rule 11.***  Rule 11(b) provides that by presenting a pleading or other paper to the court, an attorney represents that it is not being presented for an improper purpose and that the legal contentions are warranted by the law and facts.  Rule 11(c) provides that, if after a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, it may impose an appropriate sanction upon the attorneys, law firms, or parties that violated or are responsible for the violation.  Defendant argues that Rule 11(c) sanctions are not available in this case because plaintiff failed to comply with the

3

requirement of subpart 11(c)(1)(A), which provides that a motion for sanctions shall not be presented to the court unless the offending party fails to correct the violation within 21 days.

Because sanctions are available under 28 U.S.C. § 1447(c) even where the removing party stipulates to remand, the court need not, and does not, rely on Rule 11. *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 365 (7th Cir. 2000) ("[a] district court has jurisdiction to award attorney's fees under § 1447(c) even if the removing party voluntarily withdraws its case and stipulates to a remand).

**_28 U.S.C. § 1447(c)._**   Section 1447(c) provides, in part, that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  If removal is determined to be improper, the court has discretion to determine what amount of costs and fees, if any, to award plaintiff.  *Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997); *Valdes v. Wal-Mart Stores, Inc.,* 199 F.3d 290, 292 (5th Cir. 2000).  In determining whether to exercise its discretion to award fees, the court should consider whether the defendant had objectively reasonable grounds to believe the removal was legally proper. *Valdes,* 199 F.3d at 292.  An award of costs and fees does not require a finding that the defendant acted in bad faith.  *Miranti v. Lee*, 3 F.3d 925, 929 (5th Cir. 1993); *News-Texan, Inc. v. City of Garland*, 814 F.2d 216, 220 & n.20 (5th Cir. 1987).

There is an exception to the general rule allowing a plaintiff to recover fees and costs after improvident removal.  The Fifth Circuit has held that a plaintiff is estopped from recovering costs and attorney's fees under § 1447(c) when his conduct after removal plays a substantial role in allowing the case to remain in federal court.  *Avitts*, 111 F.3d at 32.

In *Avitts*, the defendant removed plaintiffs' case to federal court based on the allegation in plaintiffs' state court complaint that defendant violated "not only state but also [f]ederal law."  *Id.* at 31.  In response to interrogatories, plaintiffs cited at least four federal laws they "believed" were violated.  *Id.*  In subsequent amendments, the plaintiffs removed the reference to federal law and named two new parties.  *Id.*  The defendants moved to dismiss the case for lack of federal question or diversity jurisdiction.  The plaintiffs argued that the federal court had pendent jurisdiction over their claims, and the district court agreed.  *Id.*  On appeal of a mandatory injunction issued during trial, the Fifth Circuit held that plaintiffs never asserted a federal cause of action, and remanded the case to the district court with instructions to remand the case to state court for lack of subject matter jurisdiction.  *Id.*  The plaintiffs then moved for costs and fees under § 1447(c) and the district court granted the motion.  The Fifth Circuit, citing *Bankston v. Burch*, 27 F.3d 164, 169 (5th Cir. 1994), reversed the award, stating "[g]iven the active role [plaintiffs] took in persuading the district court

5

to retain jurisdiction of the case, fees are not appropriate." *Avitts*, 111 F.3d at 33. Similarly, in *Bankston*, the court denied fees and costs where the plaintiff mischaracterized the claims in his state court petition (preventing joinder of non-diverse but necessary defendants) and opposed a motion to dismiss for lack of subject matter jurisdiction. 27 F.3d at 166-67.

Plaintiff's actions in this case are not the type of affirmative actions held in *Bankston* and *Avitts* to prevent recovery of costs and fees. Plaintiff never advocated for this court to retain jurisdiction over this case. He also did not file a misleading complaint that obscured the true nature of his claims. He sued a likely defendant, the entity that issued his pay checks, and clearly asserted only state law claims. Moreover, in *Avitts* and *Bankston* the propriety of removal was dependent on the nature of plaintiffs' claims. In contrast, defendant here was in the best position to know the key jurisdictional fact, its own citizenship. Finally, in both *Bankston* and *Avitts*, the plaintiffs' first request for fees came after the case had been remanded back to the district court after appeal to the Fifth Circuit. This case remained in federal court far too long, but the issues of diversity jurisdiction and sanctions were raised in the district court in advance of trial.

Plaintiff could have, and should have, filed a motion to remand even though he could not prove the defendant's citizenship. However, under the circumstances this

6

error does not equate to "a substantial share of the responsibility" for the case remaining in federal court.  It is reasonable to expect a corporate defendant to investigate and inform its counsel of sufficient facts to allow counsel to make a citizenship determination prior to removing a case to federal court based on diversity jurisdiction.  It is well-settled that the removing defendant bears the burden to establish federal jurisdiction. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  A defendant cannot escape this responsibility simply because its corporate genealogy is complicated.  In this case, defendant removed this case without sufficiently investigating its citizenship, and then either neglected or refused to investigate the issue after removal despite plaintiff's repeated objections to subject matter jurisdiction.[2]  It is clear that proper investigation prior to removal would have led the defendant to the conclusion that subject matter jurisdiction was lacking in this case.  That is precisely the conclusion defendant's counsel reached when finally forced to investigate by this court's order setting a hearing on the jurisdictional question.

---

[2]     *See* November 29, 2004 Rule 26 joint discovery case management plan (Dkt. 6) stating "[d]epending upon the facts, plaintiff may challenge the subject matter jurisdiction"; January 25, 2005 letter from plaintiff's counsel to defendant's counsel stating "the scope and extent of the business in the Houston area relates to the diversity issue"; February 28, 2005 letter from plaintiff's counsel to defendant's counsel stating "this information is relevant to the issue of whether Tyco has sufficient presence in the state to be 'a citizen' for diversity purposes"; June 30, 2005 letter from plaintiff's counsel to defendant's counsel discussing the requests for production related to Tyco's principal place of business;

Under the circumstances, plaintiff is entitled to recover costs and fees that are the result of defendant's wrongful removal.

***Amount of Award.***  Having ruled that plaintiff is entitled to some compensation, the court must determine what amount of costs and fees to award.  In cases of wrongful removal, the amount of costs and fees must be limited to those incurred in the federal court that would not have been incurred had the case remained in state court.  *Avitts*, 111 F.3d at 32.  In addition, the number of hours worked and the rate charged must be reasonable.  *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (setting forth factors relevant to reasonableness); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

Defendant does not argue that the rate charged by either lawyer is excessive, and the court finds that $150 for an experienced associate and $250 for experienced lead counsel are reasonable rates in this jurisdiction for this type of case.  However, defendant contends that plaintiff is seeking hours that are not due to the case being in federal court and that are excessive given the nature of the work performed.

Plaintiff contends that he is seeking only fees and costs that were incurred in federal court as a result of removal, and is not seeking fees and costs for work that would have been done even if the case remained in state court.  Plaintiff has presented the affidavits of his lead counsel, Hak Dickenson, and an associate, Carrie Arnett.

Arnett testifies by affidavit that she performed 79 hours of compensable work in federal court.  Her hours are broken down into 43.5 "exclusive" federal hours and 35.5 "allocated" federal hours.  Likewise, Dickenson testifies by affidavit that he performed 72.5 hours of compensable work in federal court, consisting of 35.5 "exclusive" federal hours and 37 "allocated" federal hours.

Counsel defines exclusive federal hours as those hours of work which would not have been necessary had the case remained in state court.  For example, reviewing removal papers, preparing financial disclosures, attending the Rule 26(f) conference and preparing a case management plan, discovery on the diversity issue, research on diversity, preparing for and attending the hearing on jurisdictional issues, and preparing the motion for sanctions.  Allocated federal hours are defined as those that may not be peculiar to federal court, but will likely have to be repeated in state court.  For example, research performed in order to respond to the motion to dismiss and motion for summary judgment.  Counsel argues that substantial work for researching and drafting briefs will have to be repeated to customize the briefs for state court.

The court declines to award plaintiff any allocated federal hours.  The claims in this case are governed by state law, even in this federal court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Texas Dept. of Housing and Community Affairs v. Verex Assur., Inc.*, 68 F.3d 922, 928 (5th Cir. 1995). The vast majority of "allocated" hours

relate to preparing the motion to dismiss and summary judgment responses.  This is work that would have been necessary in state court.  While the court recognizes the briefs will have to be modified, this should not require a significant amount of time given that the claims and defenses are identical in state or federal court.

Plaintiffs' claim for "exclusive" federal hours is also overstated.  As defendant points out, Arnett spent 2.5 hours and Dickenson spent 10 hours researching diversity and removal issues *after* defendant had filed its September 9, 2005 memorandum conceding that diversity of citizenship was not present in this case.  Because the court had ordered the parties to exchange evidence on that day, and defendant filed its statement electronically, plaintiff should have known further research was unwarranted

In addition, well over half of Arnett's 43.5 "exclusive" federal hours, 26, are for preparation of the motion for sanctions.  Dickenson has attributed an additional 15.5 hours, almost half of his "exclusive" federal hours, to the motion for sanctions.  Those hours (41.5) represent an expenditure of $7,775.00 in fees for the sanctions motion alone, an unreasonable amount of time and a unduly large percentage of the total fees requested.  The sanctions issue is not novel or complicated. A fee equivalent to an associate working 8 hours will fairly compensate plaintiff for this task.

In sum, the court will allow recovery of Arnett's fees for 23 hours at the rate of $150.00 per hour, or $3,450.00. The court will allow recovery of Dickenson's fees for 10 hours, or $2,500.00. Plaintiff's total fee award is $5,950.00

Plaintiff also seeks $2,056.53 in costs, or 21% of his total costs incurred to date in this case of $9,678.57.[3] The 21% figure is the percentage of lawyer hours attributed to federal court out of the total lawyer hours worked on the case. While superficially appealing, the number of hours worked by the lawyers does not necessarily bear a relationship to the costs incurred. In addition, the court has significantly reduced the number of hours that are compensable. Therefore, the percentage method employed by plaintiff does not give an accurate accounting of costs that are the result of the removal. For instance, one cost itemized by plaintiff is a payment to Harris County District Court, presumably for filing and/or service fees. There is no reason why even 21% of that expense should be born by defendant. Most of the itemized costs are for deposition and record services. Discovery has to take place in state court as in federal court. Plaintiff does not explain why these costs were increased because the case was in federal court. Some charges appear to be payments to individuals (Tri Luu, Mark A. Aguirre), whose identity and service is unknown. Over $430.00 is for postage and

---

[3]     Exhibit B to Dickenson's affidavit briefly lists each item constituting the $9,678.57 in costs for which plaintiff seeks a percentage recovery.

11

copies, expenses normally incurred in any case in any jurisdiction. Several entries are for legal research, but there is no indication which, if any, of these entries relate to research on the jurisdiction issue as opposed to research on substantive issues in the case. There is simply no evidence that plaintiff's costs are due to the fact that the case was removed from state court. Based on the record provided, the court will not award costs.

III.   **CONCLUSION AND ORDER**

Defendant wrongfully removed this case from state court. Plaintiff is entitled to an award pursuant to 28 U.S.C. § 1447(c) for fees and costs incurred as a result of the wrongful removal. However, plaintiff has not met his burden to prove that all of the costs and fees he seeks resulted from the wrongful removal. The court concludes that the record supports a total award of $5,950.00. It is therefore

ORDERED that plaintiff's motion is granted in part and denied in part. It is further

ORDERED that plaintiff shall recover from defendant the sum of $5,950 as his reasonable attorney fees incurred as a result of defendant's wrongful removal.

Signed at Houston, Texas on October 18, 2005.


_____
Stephen Wm Smith
United States Magistrate Judge